# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANDREW SARGENT,

      Plaintiff,

   v.

AMAZON.COM, INC. and AMAZON.COM
SERVICES LLC,

      Defendants.

Civil Action No. 23-1330-RGA

MEMORANDUM ORDER

Before me is Defendants' motion to dismiss. (D.I. 5). I have considered the parties'

briefing. (D.I. 6, 8, 9). For the reasons set forth below, this motion is DENIED.

## I.    BACKGROUND

Plaintiff, an African American male, has been employed by Defendants since June 18,

2021 as a stower at the ILG1 Warehouse in New Castle, Delaware. (D.I. 1-1, Ex. A ¶¶ 16–17).

A stower's job responsibilities consist of scanning incoming goods and placing them on shelves.

(*Id.* ¶¶ 18, 20). On March 23, 2022, Plaintiff saw a box "ready for shipment" in the work area

with "Trump 2024" written on it and a swastika drawn on it. (*Id.* ¶ 24). Plaintiff took photos

and reported the message and drawing to his supervisor and HR. (*Id.* ¶¶ 25–26). During the

following weeks, Plaintiff observed, and reported, many other pieces of racial or sexual graffiti

in the work area. (*Id.* ¶ 29). Plaintiff relates:

> 31.    Plaintiff discovered on pillar 340 racially and sexually offensive messages
> using the N-word with a depiction of a penis before June 2022. [It was not removed
> for more than a year].

> 32.    Other bins/drawers and boxes were covered with racially motivated hate
> speech: "I eat black ass" (with drawing); "For 10hrs all I do is Write on Bins" (with

a picture of a devil's face"; "Dick in the box" (with penis drawing); "ICQA eat shit" (with drawing); "Trump 2024 N*****" (with swastika); "I cum in peace"; "Trump is God, N*****"; "Good Morning ICQA", "DEEZ Nuts" (with drawing); "Please hold my cock" (with drawing); "Get off my Dick" (with drawing); "I'm Back Bitch"; "Get off my cock"; "Too Many N***** in This building"; drawings of male genitals, and many more with swastikas and Trump 2024.

(*Id.* ¶¶ 31–32 (cleaned up)).

Other employees, including other African American employees, also complained to Defendants about the messages. (*Id.* ¶¶ 38–40). Despite these complaints, Defendants made no efforts to remove the messages for months. (*Id.* ¶¶ 30, 37, 46). "As he feared for his safety and emotional wellbeing, Plaintiff requested a shift transfer to a flex shift," which had a reduced hourly rate and a lower number of hours. (*Id.* ¶ 36 (cleaned up)). Plaintiff filed a complaint with the EEOC on September 17, 2022. (*Id.* ¶ 41).

On September 26 and 27, 2022, Plaintiff was "ordered by three Caucasian supervisors to remove the drawer/boxes/bins with the racially and sexually offensive messages and replace them with new/unused drawer/boxes." (*Id.* ¶¶ 43, 47–48). After Plaintiff informed his manager that he had run out of replacement boxes, "she instructed Plaintiff to go through all the aisles and tally all of the remaining drawer/boxes/bins which contained racially and sexually offensive messages and provide her with a list of drawer/boxes/bins which still needed to be replaced." (*Id.* ¶¶ 49–50). "Plaintiff was forced to take medical leave on December 27, 2022, due to the stress, anxiety and fear for his personal safety caused by the presence of sexually offensive and racially motivated hate speech." (*Id.* ¶ 53).

Plaintiff filed the present action in Delaware Superior Court. (D.I. 1 ¶ 1). The case was removed to this Court. (D.I. 1). The Complaint raises racial discrimination, race-based hostile work environment and retaliation claims under Title VII and the Delaware Discrimination in Employment Act ("DDEA") (Count I) and under 42 U.S.C. § 1981 (Count II), gender

discrimination sex-based hostile work environment claims under Title VII and the DDEA (Count

III), and negligent hiring, supervision, and retention claims (Count IV).  (D.I. 1-1, Ex. A).

Defendants move to dismiss all claims.

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the

accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule

12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint

as true and viewing them in the light most favorable to the complainant, a court concludes that

those allegations "could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than

labels, conclusions, or a "formulaic recitation" of the claim elements.  *Id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." (internal quotation marks omitted)).

### III.    DISCUSSION

### A.  Discrimination

Plaintiff alleges Defendants discriminated against him based on race and sex by "fail[ing]

to take any corrective action to eradicate the discriminatory comments," by "assign[ing] him the

role of removing the discriminatory writings," and by "constructively demoting him and

ultimately forcing him to take medical leave." (D.I. 8 at 6).

To state a prima facie claim for discrimination under Title VII, Plaintiff must allege: "(1)

he is a member of a protected class; (2) he was qualified for the position he sought to attain or

retain; (3) he suffered an adverse employment action; and (4) the action occurred under

circumstances that could give rise to an inference of intentional discrimination." *Makky v.*

*Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). "[Courts] evaluate plaintiffs' DDEA claims under

the same framework used to evaluate Title VII claims." *Spady v. Wesley Coll.*, 2010 WL

3907357, at *3 n. 4 (D. Del. Sept. 29, 2010) (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328,

329 n. 1 (3d Cir. 2007)); *see also Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir.

2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

"[T]he substantive elements of a claim under section 1981 are generally identical to the elements

of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175,

181–82 (3d Cir. 2009).

An "adverse employment action" is "an action by an employer that is 'serious and

tangible enough to alter an employee's compensation, terms, conditions, or privileges of

employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting

*Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Such an action must constitute "a

significant change in employment status, such as hiring, firing, failing to promote, reassignment

with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Defendants maintain that Plaintiff fails to allege an adverse employment action.[1] (D.I. 6 at 4). Plaintiff contends Defendants altered the terms, conditions, and privileges of his employment by failing to take corrective action for over six months and by "forcing him to act in a custodial role." (D.I. 8 at 6–8). Plaintiff also argues he was constructively demoted as he was "forced to transfer to a different shift in an effort to protect his wellbeing." (*Id.* at 8).

The Complaint plausibly alleges that Defendants assigned Plaintiff to perform tasks outside his job description requiring Plaintiff to locate and remove boxes with discriminatory writing.[2] These tasks that do not appear to fall within a stower's job responsibilities. Defendants argue that "a mere change in job duties is not an adverse employment action." (D.I. 9 at 3 (citing *Meltzer v. City of Wilmington*, 932 F. Supp. 2d 602, 610–11 (D. Del. 2013)). *Meltzer*, which addressed a motion for summary judgment (*see id.* at 605), does not stand for this proposition. Rather, the court in *Meltzer* noted "a change in job assignments or work-related duties may only be [an] adverse employment action if the change is substantial and material and it alters the terms, conditions, or privileges of employment." *Id.* at 611 (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001)). While I have some doubts regarding the

---

[1] Defendants' briefing analyzes and addresses Plaintiff's race-based and sex-based claims together. (*See* D.I. 6 at 4 n. 3). As Defendants' criticisms appear to apply to both sets of claims, and as Plaintiff does not raise any objections to this approach, I will similarly treat these claims as rising and falling together.

[2] Defendants note that the Complaint does not explicitly state that the adverse employment action element is met based on this reassignment of duties. (D.I. 6 at 13). I nevertheless believe the Complaint contains sufficient factual allegations from which to reasonably infer Defendants' liability on this basis. (*See* D.I. 1-1, Ex. A ¶¶ 17–21, 43–50, 79, 90).

substantiality of Plaintiff's altered responsibilities, that factual question is better addressed at a later stage (and, in any event, Defendants' briefing does not discuss materiality).

As I find Plaintiff has adequately pled an adverse employment action based on Plaintiff's assignment to custodial duties, I need not address whether Plaintiff's other asserted adverse employment actions are sufficient to maintain a discrimination claim. I decline to dismiss Plaintiff's discrimination claims.

### B. Hostile Work Environment

Plaintiff alleges he was subjected to a hostile work environment based on Defendants' inaction in removing the offensive graffiti.

Title VII prohibits racial discrimination that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). "To succeed on a hostile work environment claim under Title VII and § 1981, an employee must establish that (1) he suffered intentional discrimination because of his protected characteristic, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability." *Sousa v. Amazon.com, Inc.*, 2023 WL 7486751, at *2 (3d Cir. Nov. 13, 2023) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)) (cleaned up); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (explaining that the elements of employment discrimination claims are "generally identical" under § 1981 and Title VII). "[T]he evidence needed to prevail under the DDEA is generally the same as that needed to prevail under Title VII." *Hyland*, 608 F. App'x at 82. The Supreme Court has interpreted the phrase "terms, conditions, or privileges of

6

employment" to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation omitted).

Defendants maintain Plaintiff's claims should be dismissed because the Third Circuit has held that "alleged racist graffiti randomly placed throughout the workplace . . . in and of themselves are not enough to support a viable hostile work environment claim." (D.I. 6 at 9 (citing *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005); *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609–10 (3d Cir. 2007); *Fields v. Am. Airlines, Inc.*, 606 F. Supp.3d 66, 114–115 (E.D. Pa. 2023)). Defendants' cited cases, none of which deal with the pleadings stage, do not stand for the broad proposition that graffiti is categorically insufficient to support a hostile work environment claim. On the contrary, the court in each case based their conclusions on specific factual findings after conducting a thorough analysis of the record. *See Caver*, 420 F.3d at 263 (noting Plaintiff never personally saw the racist graffiti or flyers); *Woodard*, 255 F. App'x at 610 (finding one incident of racist graffiti and the Defendant's failure to remove it promptly did not allow a trier of fact to find in Plaintiff's favor); *Fields*, 696 F. Supp. 3d at 115–116 (noting that Plaintiffs often did not report the graffiti that occurred sporadically over the course of seven years and that, when they did report it, all but one of Plaintiffs' supervisors took the complaints seriously). I see no reason why racially and sexually offensive messages and graffiti categorically could not support a viable hostile work environment claim at the motion to dismiss stage.

Defendants point out, "The Complaint lists multiple examples of the graffiti, but none reference Sargent." (D.I. 6 at 10). Defendants argue this warrants dismissal of Plaintiff's hostile work environment claim because Plaintiff "fails to allege that any of the graffiti at [the

workplace] would not have been written but for his race or was directed at him specifically."
(*Id.* (analogizing to *Caver*, 420 F.3d at 263) (emphasis omitted); *see Caver*, 420 F.3d at 263
("Davis cannot meet the first element of the hostile work environment claim under Title VII . . .
—causation—solely by pointing to comments that were directed at other individuals." (emphasis
omitted))).

Defendants appear to suggest that *Caver* provides for a blanket rule that graffiti, absent
some indication in its message that a particular individual is its intended target, cannot be
"directed at" someone (even if, for example, the graffiti is directed at a minority group to which
that person belongs). The *Caver* court, however, never discussed this issue. *See Caver*, 420 F.3d
at 263 (finding insufficient evidence to support a hostile work environment claim because no
racist comments were directed at Plaintiff and because Plaintiff never personally saw any racist
graffiti or flyers). Furthermore, Plaintiff's position runs counter to the Third Circuit cases that
explain that "conduct can make a workplace hostile even if it was not directed at the plaintiff."
*Norris v. NLMK Pennsylvania LLC*, 2024 WL 1209747, at *6 (3d Cir. Mar. 21, 2024) (citing
*Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 110 (3d Cir. 1999) ("[A] plaintiff may show that,
while she was not personally subjected to harassing conduct, her working conditions were
nevertheless altered as a result of witnessing a defendant's hostility towards other women at the
workplace.")). I therefore find that Plaintiff's pleading of his hostile work environment claim
sufficient to survive at the motion to dismiss stage.[3]

_____

[3] In their reply brief, Defendants questioned whether the conduct alleged in Plaintiff's meets the
severe or pervasive standard. (D.I. 9 at 7). I do not consider this argument as Defendants failed
to raise it in their opening brief. In addition, this issue presents a factual dispute not suited to
resolution at this stage.

### C. Retaliation

Plaintiff contends Defendants took retaliatory action in response to his complaints about racial discrimination.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) he engaged in conduct protected by Title VII; (2) after or contemporaneous with engaging in that conduct, his employer took an adverse action against him; (3) the adverse action was "materially adverse"; and (4) there was a causal connection between his participation in the protected activity and the adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). "Retaliation claims under the DDEA . . . should also be analyzed using the same framework." *Lehmann v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388, 391 (D. Del. 2009). The standard applied in Title VII retaliation cases also applies in section 1981 cases. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).

Defendants argue Plaintiff failed to allege a protected activity or an adverse employment action. (D.I. 6 at 11). As discussed above, Plaintiff has plausibly alleged an adverse employment action based on reassignment of job responsibilities. I turn to Defendants' challenge to Plaintiff's proffered protected activity.

Plaintiff argues he engaged in protected activity by making complaints to his supervisor, HR, and to the EEOC. (D.I. 8 at 16–17). Defendants challenge whether Plaintiff held "an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." (D.I. 6 at 12 (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193–94 (3d Cir. 2015); *see id.* at 193 ("Although a plaintiff in a retaliation case need not prove the merits of the underlying discrimination complaint, she must have acted under

a good faith, reasonable belief that a violation existed." (cleaned up)); *see also Moore*, 461 F.3d

at 341 ("Whether the employee opposes, or participates in a proceeding against, the employer's

activity, the employee must hold an objectively reasonable belief, in good faith, that the activity

they oppose is unlawful under Title VII.")).  As stated earlier, the Complaint sufficiently pleads a

hostile work environment claim.  I therefore find that, based on at least the EEOC complaint

regarding Defendants' inaction in cleaning up the graffiti, Plaintiff has plausibly alleged that he

engaged in a protected activity.  I will not dismiss Plaintiff's retaliation claim.

### D.  Negligence

Defendants maintain Plaintiff's negligent hiring, supervision, and retention claims must

be dismissed because "the allegations in the Complaint are nothing more than a conclusory

recitation of the elements of his claim."  (D.I. 6 at 14 (referencing D.I. 1-1, Ex. A ¶¶ 127–31)).

Defendants argue, "Aside from incorporating by reference all previous paragraphs in the

Complaint, Sargent offers no factual allegations to support his threadbare negligent hiring,

supervision, and retention claims." (*Id.* at 15).  While I agree with Defendants that paragraphs

127–31 of the Complaint present conclusory assertions, I cannot ignore the factual allegations

from other paragraphs in the Complaint that are incorporated by reference. *See Tellabs, Inc. v.*

*Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007) ("[C]ourts must consider the complaint in

its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions").  When properly considering the entirety of the Complaint, the factual allegations

provide for the reasonable inference that one or more employees were responsible for the graffiti

at issue and that Defendants are liable for negligent hiring and negligent supervision and

retention.[4]  (*See, e.g.*, D.I. 1-1, Ex. A ¶ 32 (identifying one piece of graffiti that reads, "For 10hrs all I do is Write on Bins")).

## IV.    CONCLUSION

For the above reasons, Defendants' motion to dismiss (D.I. 5) is DENIED.


IT IS SO ORDERED.


Entered this 26 day of August, 2024


United States District Judge

---

[4] In a footnote, Defendants argue Plaintiff's claim should be dismissed because Delaware law does not recognize a single cause of action for negligent hiring, supervision, and retention.  (D.I. 6 at 14 n. 5 (citing *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 825 (Del. Super. Ct. 2009))).  Defendants state that they believe, and Plaintiff does not dispute, that Plaintiff is raising two separate claims of negligent hiring and negligent supervision and retention.  (D.I. 6 at 14).  Defendants fail to explain why this is a basis to dismiss Plaintiff's negligence claims.  *See Jeanjacques v. AMC Ent. Holdings, Inc.*, 2021 WL 4478665, at *3 (E.D. Pa. Sept. 30, 2021) ("Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3) govern our construction of pleadings. Both subsections allow the inclusion of multiple claims in one count based on the same conduct." (footnotes omitted)); *see also Fanean*, 984 A.2d at 816, 825–26 (denying the motion to dismiss Plaintiff's negligence claims despite the complaint grouping Plaintiff's negligent hiring and negligent retention claims together under a single count).